IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

WILLARD HEAD                                                                                    PLAINTIFF

V.                                                                   CIVIL ACTION NO. 1:16-CV-77-SA-DAS

CITY OF COLUMBUS
LIGHT AND WATER DEPARTMENT                                                                      DEFENDANT

MEMORANDUM OPINION

Willard Head filed his Complaint [1] in this Court on May 9, 2016 alleging that his former employer, the City of Columbus, Mississippi Light and Water Department wrongly fired him because of his age and physical disability. Head seeks relief under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. Now before the Court is the Department's Motion for Summary Judgment [35] on all claims. Head filed a Response [40] and the Department filed a Reply [43] making this issue ripe for review.

*Factual and Procedural Background*

Head was involved in an automobile accident in 1992 while driving a truck for his then employer, Hardin's Bakery. Because of injuries sustained in the accident, Head had his right hip replaced. Head was unable to continue in his job as a truck driver because of his injury, so he sought re-education as a draftsperson at East Mississippi Community College. During his final semester, Head's instructor recommended him for a mapping position at the Columbus Light and Water Department. Superintendent C.F. Williams hired Head, while still a student, for the mapping position in June of 1995. Head's employment application from 1995 notes "a physical defect which precludes him from performing certain kinds of work." Specifically, Head noted on his application "hip replacement, no heavy lifting."

Head's primary job responsibility was to update and maintain the Department's computerized master map of the electrical system including lines, poles, and other devices. Head received "staking sheets," mostly technical drawings, from his supervisor Chief Engineer Rusty Jaudon with changes. Head took the information from the staking sheets and used it to update the master map. Head received training on mapping, especially early on. Occasionally, Head would go out into the field to collect GPS location data on electrical poles or equipment for mapping purposes. The Department also trained Head as a dispatcher.

Although Head and Jaudon shared an office space in the Department's electrical warehouse for almost nineteen years, Head had personal issues with Jaudon. Head thought Jaudon had unrealistic expectations, that he treated everyone at the Department unfairly, and was generally a poor manager. In particular, Head complained about Jaudon's poor personal hygiene and strong offensive body odor. It was no secret that Head and Jaudon had a tense relationship.

According to Superintendent Williams, Head was a generally a good employee but over the years he started to lose focus. Jaudon also tasked Head with some additional responsibilities over the years. On at least one occasion, Jaudon sent Head out with a crew to clear some trees after a storm, Head sometimes covered the warehouse when the warehouse personnel were on break, and Head often covered dispatch when the regular dispatcher was out or at lunch. Head complained to Williams that doing physical labor like dragging brush was painful and difficult for him with his artificial hip.

Head was also tasked with managing the Department's security light program. Customers that wanted to have an overhead security light installed at their property would contact the Department and Head would go out to meet the customer, determine the best location for the security light, and get the customer to sign a contract. Head did not like having these additional

tasks and responsibilities. In his opinion, he was hired to do mapping and these other tasks were distractions that took him away from his main responsibility.

In 2009, Head's job description was updated to the following:

___

Job Description

Job Title:      Engineering Assistant
Area:           Electrical Division
Pay Grade:      5
Reports To:     Chief Engineer

Job Summary:  To assist in the performance of routine, engineering duties in accordance with well established procedures and to perform related field works as required.

Essential Functions:
1.   Collect data and prepare documents as instructed.
2.   Read maps and blueprints.
3.   Prepare work orders.
4.   Maintain computerized records.
5.   Make simple measurements and recordings.
6.   Maintain good public relations and work to enhance the image of the CL&W.
7.   Operate utility vehicle as assigned.
8.   Use drafting and survey tools and equipment.
9.   Operate various computer terminals.
10.  Perform other duties as assigned by supervisor.

Educational Requirements: Minimum of high school diploma, GED or equivalent. College level algebra and geometry desirable.

Job Requirements
1.   Must have and maintain a valid Mississippi Driver's License.
2.   Must be able to add, subtract, multiply, and divide all units of measure.
3.   Should have basic working knowledge of electric utility operations and practices.
4.   Must have ability to read maps.
5.   Must have ability to work with computers.
6.   Must be able to understand and follow written and oral instructions.
7.   Must be able to carry out routing job assignments and be able to implement solutions for routine problems without the directions of the Supervisor and accomplish all assignments without constant supervision.
8.   Must be able to maintain clear and concise records.
9.   Must be able to lift and carry 50 lbs.
10.  Must be able to work outdoors in differing weather conditions and temperature

variations.
11. Must be able to stand, walk, sit, reach with hands and arms, climb, balance, stoop, kneel, crouch, and crawl.
12. Must be able to work overtime and call back for emergencies and other periods of time as needed.
13. Must be able to speak clearly and concisely and listen carefully.
14. Must have the ability to establish and maintain effective working relationships.

_____

Over the years, Head and Jaudon had various disagreements. Head complained to Superintendent Williams about Jaudon, and Williams advised Head to keep his head down and do his job.[1] Jaudon brought some errors that Head made to Williams' attention informally but Head was never formally disciplined.

In September of 2013, Department General Manager[2] Todd Gale observed Head asleep at his desk, acting disoriented, and slurring his speech. Gale wrote a letter to Head informing him that Head was seen "dozing off on the job" in March and September, and that he "on occasions appeared disoriented." Head was on a few medications including painkillers for his hip and Xanax. The Department kept a list of Head's medications on file for drug testing purposes. Gale instructed Head to obtain a work release from his doctor and informed him that continuing this behavior would lead to disciplinary action. Head contacted his doctor who began to taper him off the painkillers and discontinued the Xanax. Head's doctor gave him a work release.

In the Spring of 2014, Marcus Rushing replaced Williams as Superintendent. Rushing was promoted from within the Department, formerly having served as a project engineer reporting directly to the Superintendent.

Near the end of May 2014, Head was filling in on dispatch while the regular dispatcher was at lunch. Head took a call from a customer that was without power and recorded the call in

---

[1] In his deposition, Williams mentioned a few issues Head had over the years but it is unclear whether any of them resulted in formal disciplinary action. Williams also stated that he and Head were personal friends.
[2] The General Manager is over the entire Department and reports directly to an appointed five-member board.

the logbook. Head then attempted to dispatch a crew to service the customer but was unable to reach the crew because they were also at lunch. The regular dispatcher returned and Head went back to his office. Around 4:15 that afternoon the customer called back and again complained, she was still without power. Head remembered that he was not able to send a crew at lunchtime and a service crew was dispatched. An official verbal warning signed by Jaudon and Rushing was issued to Head for failing to dispatch a crew or to communicate the outage to the regular dispatcher, and for leaving the customer without power.

Less than a week later, on June 5, 2014, Jaudon wrote Head up stating, "has trouble following instructions (verbal), cannot focus on his job, makes multiple errors, does not check his work." According to Jaudon, Head made errors on three out of twenty-one updates he entered in the transformer database. Head signed the warning but disagreed stating, "I feel like I come to work focused and do a good job. It could be better without all the interruption and outside disruptions. Always learning." Head did not dispute the database errors.

In September, Head was again issued a written warning after he was an hour and a half late for work, and failed to include required information on a phone log and repair sheet. Head admits that he overslept because his alarm did not go off. The Department suspended Head for five days.

Head was terminated in October after Jaudon reviewed 164 of his mapping updates and found errors on thirty of them. General Manager Gale, Superintendent Rushing, and Chief Engineer Jaudon were all present for Head's termination. Head's termination letter notes that he was previously warned regarding his job performance in May, June, and September.

Head filed a discrimination charge with the Equal Employment Opportunity Commission alleging that the Department fired him because of his age and disability. Head received a right-

to-sue letter from the Commission and subsequently filed this suit. Head alleges that his work did not deteriorate and that but for his age, disability, and need for accommodation the Department would not have fired him. Head was fifty-eight years old at the time of his termination and the Department replaced him with a person fifty years old. The Department counters it fired Head for poor performance and now requests summary judgment in its favor on all of Head's claims.

*Standard of Review*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations,

6

speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993); *Little*, 37 F.3d at 1075.

*Age Discrimination*

Under the Age Discrimination in Employment Act, an employer may be liable for "discharg[ing] any individual . . . because of such an individual's age." 29 U.S.C. § 623(a)(1). To prove discriminatory termination under the ADEA, the plaintiff must show that but for the alleged discrimination, he would not have been terminated. *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). When, as here, a plaintiff seeks to establish his claim with circumstantial evidence only, the Court assesses the sufficiency of the evidence using the *McDonnell Douglas* burden-shifting framework. *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013) (citation omitted).

Within the *McDonnell Douglas* contours, Head must first establish a *prima facie* case of age discrimination, "at which point, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the employment decision." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). If the Department meets its burden of production, Head must introduce evidence from which a jury could infer that the Department's proffered reasons are not true — but are instead a pretext for discrimination— or that even if the Department's reasons are true, Head was terminated "because of" his age. *Miller*, 716 F.3d at 144 (citing *Gross*, 557 U.S. at 180, 129 S. Ct. 2343). To demonstrate pretext under the ADEA, Head must offer evidence to rebut *each* of the employer's proffered reasons. *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996) (en banc) (quoting *Grimes v. Tex. Dept. of Mental Health & Mental*

7

*Retardation*, 102 F.3d 137, 140–41 (5th Cir. 1996)).

## Age Discrimination: Prima Facie Case

To establish a *prima facie* case of discriminatory termination under the ADEA, Head must demonstrate that he: (1) was discharged, (2) was qualified for the position held, (3) was a member of the protected class, and (4) was either replaced by someone younger, replaced by someone outside the protected class, or otherwise discharged because of his age. *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011) (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)). The Department contests only the final element for summary judgment purposes, arguing that the eight-year gap between Head and his replacement is not legally sufficient to establish a *prima facie* case of age discrimination.

Neither the Supreme Court nor the Fifth Circuit has provided a bright-line rule to determine which age differences are considered substantial and which are considered insubstantial. *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988) ("The ADEA does not lend itself to a bright-line age rule."); *Hall v. Sealy, Inc.*, 2011 WL 4389701, at *5 (N.D. Tex. Sept. 21, 2011). The Fifth Circuit stated in dicta that five years presents a "close question" as to whether the age difference is legally sufficient, *Rachid*, 376 F.3d at 313, and has held four years to be insubstantial as a matter of law. *Earle v. Aramark Corp.*, 247 F. App'x 519, 523 (5th Cir. 2007).

District Courts within the Fifth Circuit, including this one, have routinely treated the fourth element as satisfied for summary judgment purposes when the age difference between a plaintiff and his replacement is seven years or more. *See Ruth v. Eka Chemicals, Inc.*, 92 F. Supp. 3d 526, 530 (N.D. Miss. Feb 17, 2015), *aff'd,* 623 F. App'x 281 (5th Cir. 2015); *Frazier v. Lockheed Martin Operations Support, Inc.*, 2013 WL 2897897, at *4 (S.D. Miss. June 13, 2013)

(finding that age differences of seven, eight, and seventeen years were sufficient for purposes of the plaintiff's prima facie case). *See Hall*, 2011 WL 4389701, at *5 (declining "to conclude as a matter of law that an age difference of more than nine years is insubstantial"); *Bell v. Raytheon Co.*, 2009 WL 2365454, at *6 (N.D. Tex. July 31, 2009) (assuming that an approximately seven-year difference is substantial); *Daly v. Home Depot U.S.A., Inc.*, 2007 WL 4260900, at *5 (W.D. Tex. Dec. 3, 2007) (finding that a difference of seven years is a "close question," but assuming for summary judgment purposes that it is sufficient); *Cannon v. St. Paul Fire & Marine Ins. Co.*, 2005 WL 1107372, at *4 (N.D. Tex. May 6, 2005) ("The Court is not prepared to declare an age difference of approximately seven years insubstantial as a matter of law.").

This Court chooses to follow the lead of other district courts within the Fifth Circuit and holds that an eight-year difference is sufficient for purposes of the fourth *prima facie* element. The Court thus finds Head has carried his *prima facie* burden by showing he was replaced by an employee eight years his junior.

*Age Discrimination: Non-Discriminatory Reasons*

Because Head carried his *prima facie* burden, the burden shifts to the Department to provide at least one legitimate nondiscriminatory reason for terminating him. *Berquist*, 500 F.3d at 349. The Department's reason for the adverse employment action need not be persuasive or credible. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002). Instead, its burden is to produce "evidence, which, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Hicks*, 509 U.S. at 509, 113 S. Ct. 2742).

Here, the Department has advanced poor performance as its legitimate nondiscriminatory

reason for firing him. Specifically, the Department asserts that it fired Head for, all in 2014: (1) Failing to dispatch a service crew to an outage in May, (2) making errors on updates to the transformer database in June, (3) showing up an hour and a half late and making errors on a phone log and repair sheet in September, and (4) making errors on a significant number of mapping updates in October.

As noted above, the Department is not "required to 'persuade the court that it was actually motivated by the proffered reasons.'" *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 901 (5th Cir. 2012) (quoting *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). It must only "clearly set forth, through the introduction of admissible evidence, the reasons for [its decision]." Accordingly, the Court finds that the Department satisfied its burden of production here.

*Age Discrimination: Pretext or Because of Age*

Shifting to the final stage in the *McDonnell Douglas* analysis, Head must provide sufficient evidence from which a jury could reasonably infer that the Department's reasons are merely pretextual, or that even if the reasons are true, his age was the but-for cause of his termination. *Miller*, 716 F.3d at 144 (citation omitted). Pretext may be demonstrated "through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010)).

*Age Discrimination: Pretext: May Dispatch Error*

Head acknowledges that he failed to dispatch a crew to an outage in May but argues that his failure was not unique, and that other dispatchers made mistakes but were not disciplined. Regular dispatcher Waltman agrees that she occasionally made mistakes in dispatch, such as

forgetting to record a phone number, but that her mistakes were not a detriment to the company, and that she never failed to send a repair crew or to record a service call. According to Waltman and Jaudon, while mistakes were made in dispatch that went undisciplined, Head's error was more serious because it left a customer without power. When questioned, neither Waltman nor Jaudon could recall another similar incidence of a dispatcher failing to send out a crew to a customer outage. Head was similarly unable to point to another similar occurrence.

*Age Discrimination: Pretext: June Transformer Database*

Head does not dispute that he made errors updating the transformer database in June of 2014. Head did disagree with Jaudon's assessment of his focus. Head believed that he came to work focused and that he did a good job. Further Head believed that Jaudon and Rushing were just looking for a reason to get rid of him.

*Age Discrimination: Pretext: September Tardiness*

Again, Head does not dispute that he was an hour and a half late for work in September.[3] Head argues that the Department only fired one other person for being late, and that person was chronically late. Head also argues that the Department called other employees, especially lineman, when they were late or did not show up for work, but that no one from the Department bothered to call him. The Department responds that Head was only suspended for being late and that his tardiness was only one factor in his termination. The Department agrees that it often called lineman when they were late, but only due to the time sensitive nature of their responsibilities.

*Age Discrimination: Pretext: October Mapping Errors*

As to the October mapping errors, Head argues that not all of the errors are attributable to him. Head argues that in some cases the crews performed the job differently than the way it was

---

[3] The Department's other allegation, that Head made errors on a light repair sheet is disputed.

assigned and that some of his changes may have disappeared during an overnight software update. However, when questioned Head admitted that he committed at least some of the errors, and could not recall a specific software update that these errors could be attributed to or any specific instances where crew performance was the cause. Head did have a method for double-checking his work, and at some point, the Department did hire an outside company to perform remote updates to the mapping software.

*Age Discrimination: Pretext: Other Arguments*

In addition to the above specific arguments, Head also argues that his treatment from the Department changed for the worse when Rushing replaced Williams as Superintendent. Head believes that Rushing targeted him for termination because of his age. Head also argues that he was assigned additional duties, which were more physically demanding, that took him away from mapping.

In order to meet his evidentiary burden on pretext, a plaintiff must demonstrate "that [the defendant] did not in good faith believe the allegations, but relied on them in a bad faith pretext to discriminate against him on the basis of his age." *Swenson v. Schwan's Consumer Brands N. Am.*, 500 F. App'x. 343, 346 (5th Cir. 2012) (citing *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993)). To establish pretext, he must produce evidence demonstrating that it was not a true reason for his termination. *Waggoner*, 987 F.2d at 1166. Ultimately, to prevail under the ADEA, the Plaintiff must "prove, by a preponderance of the evidence, that age was the 'but-for' cause of the employer's adverse action." *Gross*, 557 U.S. at 176, 129 S. Ct. 2343. The Court also notes that, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments

have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *Sedgwick*, 276 F.3d at, 759; *Recile*, 10 F.3d at 1097; *Little*, 37 F.3d at 1075.

Here, Plaintiff Head has simply not produced any evidence, other than his own subjective belief, that the Department's proffered reason for his termination is pretextual or that he was otherwise discharged because of his age. In every instance where Head was disciplined by the Department, Head acknowledges that he did in fact make errors or commit other infractions. In other words, Head fails to dispute that the Department's reasons for firing him are not true.

Head does complain that he was assigned other duties that took him away from mapping but he fails to draw any connection between the other duties and the Department's proffered reasons for his termination. Ultimately, Head's claim rests only on his own subjective belief that he was discriminated against on the basis of his age. Without more, the Plaintiff's own subjective belief is insufficient to demonstrate that there is a genuine issue for trial as to pretext. *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995) (finding that Plaintiff's subjective belief that he had been discriminated against was not sufficient to create a jury issue as to Employer's proffered reason was a pretext for age discrimination) (citing *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir. 1993) (subjective belief that age discrimination was basis of discharge is insufficient to make an issue for the jury when employer articulates an adequate nondiscriminatory reason); *Little v. Republic Ref. Co.*, 924 F.2d 93, 96 (5th Cir. 1991) (subjective belief of employee and co-worker that age motivated the employer's action is of little value and cannot be the basis of judicial relief); *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 814 n.40 (5th Cir. 1991); *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 567 (5th Cir. 1983) (when the employee does not seriously dispute the objective truth of rational reasons articulated by the employer, pretext can not be established by a subjective belief

that discrimination motivated the employer's action), *cert. denied*, 467 U.S. 1215, 104 S. Ct. 2658, 81 L. Ed. 2d 364 (1984)).

Without any evidence to undermine the Department's proffered reasons as pretextual, any evidence to contradict any fact relevant to the Department's proffered reasons, or any other evidence that the Department's decision was otherwise motivated by discriminatory animus, Head's claim fails. Because Head has not brought forth any evidence of pretext, or that his age was otherwise the but-for cause for his termination, summary judgment is appropriate in the Department's favor on Head's claim for age discrimination.

*Disability Discrimination*

Head also asserts a claim that the Department wrongly terminated him because of his disability. The ADA prohibits discrimination on the basis of an employee's disability. Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures [. . .] discharge of employees, [. . .] and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a).

Where, as here, the Plaintiff produces no direct evidence of discrimination, but instead relies on circumstantial evidence to sustain his case, the Court applies the familiar *McDonnell Douglas* burden-shifting framework to determine whether he can sustain his claim. *Demarce v. Robinson Prop. Grp. Corp.*, 642 F. App'x 348, 352 (5th Cir. 2016). To establish a *prima facie* case of discrimination the plaintiff must show: "(1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (adopting the specific elements of a *prima facie* case as outlined in *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)).

If the Plaintiff successfully establishes a *prima facie* case of discrimination, the burden shifts to the Department to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *LHC Grp.*, 773 F.3d at 694. If the Department articulates a reason, the burden then shifts back to the Plaintiff to show that the proffered reason was merely pretext. *Id*. "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017) (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "In the context of a summary judgment proceeding, the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Id*. Importantly, the Plaintiff need not demonstrate that his disability was "the sole reason for the adverse employment decision." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479-80 (5th Cir. 2016). Head may demonstrate that his disability was a "motivating factor" in the decision "[so long as it] actually play[s] a role in the employer's decision making process and ha[s] a determinative influence on the outcome." *Id*. (citing *LHC Grp.*, 773 F.3d at 702) (alteration in original).

The Court finds that Head's claim for disability discrimination fails because he has not brought forth any evidence of a causal connection required to establish the third prong of his *prima facie* case. Other than his own subjective belief, Head cannot point to any evidence in the record that connects his disability with his termination. Even if Head had established a *prima facie* case, again he has not raised a genuine issue of fact as to pretext.

Clearly, the Department knew about Head's hip replacement and the associated work limitations. Head has pointed to only one specific incident in recent history where his disability conflicted with his work duties. Jaudon asked Head to go out into the field and nail some numbers onto electrical poles. This assignment required Head to climb a ladder, which he

reported to Jaudon he could not do. Head has not brought forth any evidence that this incident had any negative impact on his employment and has not drawn any connection between this incident and his termination. This single occurrence is insufficient to establish that Head was terminated "on account of his disability." See *LHC Grp.*, 773 F.3d at 697. In addition, as thoroughly discussed above, Head has not brought forth any evidence that the Department's proffered reason for his termination is false, or that his disability was otherwise a motivating factor in his termination.

In response to a motion for summary judgment, "an employee must present 'substantial evidence' that the employer's legitimate, nondiscriminatory reason for termination is pretextual." *Delaval*, 824 F.3d at 480 (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015)). Head's "subjective belief of discrimination . . . cannot be the basis of judicial relief." *Id.* (citing *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995). Because Head failed to establish the causation prong of his *prima facie* case, failed to bring forth "substantial evidence" of pretext, and instead relies on his own subjective belief of discrimination, summary judgment is warranted in the Department's favor on Head's claim for disability discrimination.

*Failure to Accommodate*

Finally, Head asserts a claim for failure to accommodate. Distinct from a claim that an adverse employment action was motivated by the employee's disability, an employer's failure to reasonably accommodate a disabled employee may constitute a violation of the ADA. *Dillard v. City of Austin, Texas*, 837 F.3d 557, 562 (5th Cir. 2016) (citing *LHC Grp.*, 773 F.3d at 703 n.6). "This comes from the ADA's definition of discrimination, which includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise

qualified individual with a disability who is an applicant or employee . . . .'" *Dillard*, 837 F.3d at 562 (quoting 42 U.S.C. §12112(b)(5)(A)).

However, "[t]he ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *Demarce*, 642 F. App'x at 354 (citing *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) (internal citation omitted). Ultimately, to prevail on a failure to accommodate claim, a plaintiff must prove: "(1) [he] is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Id.* (quoting *Feist v. La. Dep't of Justice*, 730 F.3d 450, 452 (5th Cir. 2013)).

The Fifth Circuit has held that "ADA compliance requires an employer to engage in an interactive process with an employee who requests an accommodation for his disability to ascertain what changes could allow him to continue working." *Dillard*, 837 F.3d at 562 (citing *LHC Grp.*, 773 F.3d at 700). "In other words, employer and employee must work together in good faith, back and forth, to find a reasonable accommodation." *Id.* (citing *Chevron Phillips*, 570 F.3d at 621–22). The Fifth Circuit has further characterized this process, as "ongoing" and "reciprocal," "not one that ends with the first attempt at accommodation, but one that continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Id.* at 562-63 (internal quotations omitted).

Although a failure to accommodate is a distinct claim, the Court notes that as a practical matter in this case there is a substantial overlap of facts and evidence between the Plaintiff's discrimination and accommodation claims. That Head has a disability that was known to the

Department is not disputed. The questions now before the Court are whether Head was a "qualified individual with a disability," whether he requested a reasonable accommodation as contemplated by the ADA, and if so whether the Department failed to make a reasonable accommodation or otherwise failed to engage in a meaningful interactive process with Head to determine what changes could allow him to continue working.

To be "qualified" under the ADA, Head must be able to "perform the essential functions" of his job "with or without reasonable accommodation." *Credeur v. Louisiana Through Office of Attorney Gen.*, 860 F.3d 785, 792 (5th Cir. 2017); 42 U.S.C. § 12111(8). "'Essential functions' are 'fundamental,' as opposed to 'marginal,' job duties such that a job is 'fundamentally alter[ed]' if an essential function is removed." *Id.* (quoting 29 C.F.R. § 1630.2(n)(l)). "Fact-finders must determine whether a function is 'essential' on a case-by-case basis." *LHC Grp., Inc.*, 773 F.3d at 698. The text of the ADA indicates where this inquiry should begin:

> For the purposes of this subchapter, consideration shall be given to the employers judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

42 U.S.C. § 12111(8).

By all accounts, and according to Head's written job description, he was able to perform the essential functions of his job. Head only pointed to one occasion in recent history where his disability was an issue, when he was asked to use a ladder to attach pole numbers. It is undisputed that Head was not required to perform this task after he raised the issue, nor did the Department take any negative action against him as a result. This one-time, or at most occasional, assignment was only marginal to Head's duties. *Credeur*, 860 F.3d at 792; 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(l). Head was able to perform the "essential functions" of his

job without an accommodation, and is therefore not a qualified individual as contemplated by the ADA. *Id.*

Even if Head was a qualified individual, there are a number of other causation faults with his claim. After reviewing the record in this case, the Court finds that there is a question as to whether or not Head ever requested an accommodation related to his disability. When questioned on the issue, Head responded that the accommodation he requested was that the Department not give him any additional duties, especially physically demanding ones, that would take him away from his mapping responsibilities. Head also requested additional training on the updated mapping software, and his request was denied.

Taking Head's request for additional training first, the Court finds that this was not a request for an accommodation as contemplated by the ADA. Although additional training on mapping may have been beneficial to Head, there is no allegation or evidence of a relationship between Head's disability, stemming from his hip replacement and his ability to perform his mapping duties. Although additional training may be a reasonable accommodation in some cases, *see* 42 U.S.C. § 12111(9)(B), Head's case is markedly different because the nature of his physical disability, and any limitation derived from it, had no relationship or commonality with the mapping training he requested. The ADA requires employers to make "reasonable accommodations *for such known limitations*," not to make any accommodation requested even if it is not related to the disability limitation. *Demarce*, 642 F. App'x at 354 (quoting *Feist*, 730 F.3d at 452) (emphasis added).

Head's request that the Department not assign him additional duties is a closer question. Even so, Head has failed to bring forth any evidence that the Department attributed any of his limitations or employment issues to his disability. *See Patton v. Jacobs Engineering Grp., Inc.*,

863 F.3d 419, 425 (5th Cir. 2017) (dismissing employee's accommodation claim when employee failed to demonstrate that employer attributed employee's workplace limitation to his disability.) The issues that Head had at work were all related to general productivity, mapping, dispatch, and appearing on time for work, not to any physical limitation. In addition, as noted above, this request is unrelated to the essential functions of Head's job. The Court finds that Head never requested a reasonable accommodation as contemplated by the ADA.

Finally, the ADA does not require that employers anticipate and avoid every potential situation in which difficulty related to a disability may arise. Instead, "ADA compliance requires an employer to engage in an interactive process with an employee who requests an accommodation for his disability to ascertain what changes could allow him to continue working." *Dillard v. City of Austin, Texas*, 837 F.3d 557, 562 (5th Cir. 2016) (citing *LHC Grp.*, 773 F.3d at 700). The record in this case reflects that Head's job duties were modified as necessary to allow him to continue working.

Because Head was not a qualified individual, and never requested a reasonable accommodation as contemplated by the ADA, both essential elements of his claim, summary judgment in the Department's favor is appropriate on this claim.

*Conclusion*

For all of the reasons fully explained above, the Department's Motion for Summary Judgment [35] is GRANTED on all of the Plaintiff's claims. With no remaining issues before this Court, this case is DISMISSED with prejudice. This CASE is CLOSED.

So ORDERED on this the 12th day of September, 2017.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE